UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PETER LaSALLE,                      )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )   Case No. 4:05CV376 FRB
                                    )
MERCANTILE BANCORPORATION, INC.     )
LONG TERM DISABILITY PLAN,          )
                                    )
        Defendant.                  )

**MEMORANDUM AND ORDER**

Presently before this Court is the motion of Defendant Mercantile Bancorporation, Inc. Long Term Disability Plan ("Defendant" or "Plan") for summary judgment (filed January 4, 2006/Document No. 31). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff filed the instant matter in the Circuit Court of the City of St. Louis on February 9, 2005 (Cause No. 052-00494) claiming that Defendant wrongfully terminated his long-term disability ("LTD") benefits. Specifically, Plaintiff claims that he currently is and will continue to be "disabled" as that term is defined in the Plan, that he has incurred damages in excess of $25,000.00, and that Defendant's termination of his benefits was vexatious and without cause. The Plan is an employee welfare benefit plan as defined in 29 U.S.C. §§1002(1)(A) and 1003(e) of the Employee Retirement Income Security Act, or "ERISA." Defendant

removed this matter to federal court on March 7, 2004, invoking this Court's federal question jurisdiction by claiming that ERISA preempts Plaintiff's state law claim.

Defendant now moves this Court for summary judgment, claiming there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Defendant argues that, because the Plan grants the Administrator discretionary authority, this Court may only review the Administrator's decision for abuse of discretion, and that the Administrator's decision to end Plaintiff's disability benefits was reasonable. In response, Plaintiff argues that the Plan is inadequately identified, and that the wrong entities reviewed and made decisions on his claim. Plaintiff claims that these procedural irregularities demand a *de novo* standard of review, under which he should be found to meet the Plan's definition of "disabled."

Pursuant to Rule 56(c), Federal Rules of Civil Procedure, summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The movant bears the burden of proving entitlement to judgment as a matter of law, and the Court must view all facts and inferences in the light most favorable to the non-movant. Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587

(1986). Once the movant has demonstrated the absence of disputed material facts, the burden shifts to the adverse party to demonstrate that genuine issues for trial remain. <u>Anderson</u>, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Id.</u> The non-movant may not rest upon the pleadings, but must rebut the motion with affidavits or other admissible evidence. <u>Celotex</u>, 477 U.S. at 324. Summary judgment is a harsh remedy and should be denied unless the movant "has established his right to judgment with such clarity as to leave no room for controversy." <u>New England Mutual Life Ins. Co. v. Null</u>, 554 F.2d 896, 901 (8th Cir. 1977). 1988). The basic inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 251-52.

### I. Evidence Before the Court

Viewed in the light most favorable to Plaintiff, the relevant facts are as follows. Mercantile Bancorporation, Inc. ("Mercantile") employed Mr. Peter LaSalle ("Plaintiff") as a Risk Product Trader beginning approximately July 31, 1995. Plaintiff participated in Mercantile's Long-Term Disability Plan. The Mercantile Plan provided for disability coverage for two years if an insured qualified as unable to perform "the duties of his job." Administrative Record ("Adm. Rec.") 923. Thereafter, the Plan provided coverage until age 65 if the insured qualified as "unable

-3-

to perform any work for which he is or may be trained." Id.

After February 24, 1998, Plaintiff stopped working at Mercantile due to a liver disorder. In June, 1998, he underwent liver transplantation surgery, and complications necessitated a re-transplantation approximately three days later. Plaintiff began receiving long term disability (LTD) benefits on August 25, 1998 under the "duties of his job" definition of disability. Additional surgical complications necessitated further liver surgery in January, 2000, and Plaintiff continued to receive LTD benefits.

By the spring of 2001, Plaintiff's doctors found that, although Plaintiff was physically able to return to work, he continued to be disabled due to depression. From this point forward, Plaintiff's receipt of LTD benefits was based upon mental illness, not physical limitations.

In June 2001, Plaintiff underwent an independent medical examination ("IME") with Dr. David Reisler, a neurologist. Dr. Reisler found no physical or cognitive limitations precluding Plaintiff from working, but ultimately concluded that Plaintiff suffered from psychiatric symptoms that interfered with his ability to work, and recommended further evaluation. Plaintiff then underwent an independent neuropsychological examination with Dr. Paul Detnick. Dr Detnick diagnosed Plaintiff with significant depression and anxiety, due to which he required support to facilitate a gradual return to work. On March 22, 2002, Plaintiff began treatment for depression and anxiety with Dr. Steve Stromsdorfer, a psychiatrist.

On March 5, 2004, Plaintiff underwent an IME with Dr. Robert Denney, a psychologist. Dr. Denney found that Plaintiff had no substantial mental deficits that would limit him from performing his own job or any other work, and noted that Plaintiff was likely malingering neurocognitive dysfunction. Dr. Denney noted that Plaintiff reported preparing his family's income taxes, paying the family's bills, trading stocks on the Internet, grocery shopping, cooking most family meals, and playing golf regularly. Dr. Denney's report was forwarded to Dr. Stromsdorfer for review and comment regarding Plaintiff's ability to work. Dr. Stromsdorfer disagreed that Plaintiff was malingering, and asserted that he, as Plaintiff's treating physician, was best able to evaluate Plaintiff's mental condition. However, Dr. Stromsdorfer also noted that he lacked the proper training to assess the validity of Dr. Denney's testing methods and results, offered no objective evidence to support his own conclusions, and did not state that Plaintiff was unable to perform any job. Dr. Denney then reviewed Dr. Stromsdorfer's letter and opined that Plaintiff simply did not meet the diagnostic criteria for major depression or anxiety, and noted that Plaintiff's symptoms would likely resolve with medication.

After reviewing Plaintiff's claim and the records, including the medical evidence, the Hartford Comprehensive Employee Benefits Service Company ("Hartford"), the Claims Administrator for U.S. Bank, terminated Plaintiff's LTD benefits as of May 31, 2004. Plaintiff appealed the denial, and his medical records were then submitted to two independent medical reviewers: Dr. Milton Jay, a

neuropsychologist, and Dr. Maureen Smith, a psychiatrist.

Dr. Jay reviewed Plaintiff's medical records and spoke with Dr. Crippen, one of Plaintiff's treating physicians. Dr. Jay found no evidence of cognitive limitations that would limit Plaintiff's job prospects, and reported that Dr. Crippin advised that he had observed no cognitive problems and that Plaintiff was not limited from working. Dr. Smith also reviewed Plaintiff's medical records and spoke with Dr. Stromsdorfer, Plaintiff's treating psychiatrist. Dr. Smith found no valid evidence that Plaintiff's functioning in the workplace was impaired by cognitive or mental/emotional symptoms, if Plaintiff were motivated to return to work. Dr. Smith further reported that Dr. Stromsdorfer stated to her: "I don't believe he has no work capacity. There are certain jobs he could probably do." Adm. Rec. 53.

Upon receipt of the foregoing reports, Plaintiff submitted a report from Dr. F. Timothy Leonberger, a consulting physician on Plaintiff's Social Security claim. Dr. Leonberger disputed Dr. Denney's malingering diagnosis, and stated that Plaintiff did not appear capable of performing the type of work he did previously. Hartford sent Dr. Leonberger's report to Drs. Jay and Smith, who both reviewed it and stated they found no evidence therein that changed their previous conclusions. On November 19, 2004, following a review of Plaintiff's appeal, the U.S. Bank LTD Benefit Claim Subcommittee ("Committee") upheld the decision to deny Plaintiff's LTD benefits beyond May 31, 2004. The Committee noted that, based upon the medical documentation on file, the

information received in the course of Plaintiff's appeal and the reports of the independent reviewing physicians, Plaintiff was capable of performing his own occupation, or any other occupation for which he could be trained. As such, the Committee concluded, Plaintiff no longer met the contractual definition of "disability." Plaintiff then filed the instant cause of action.

**II. Discussion**

A. <u>The Decision to Terminate Plaintiff's LTD Benefits</u>

Although ERISA itself does not specify the appropriate standard of review, the United States Supreme Court has held that a reviewing court should use a *de novo* standard of review, unless the Plan grants the Administrator the authority to determine eligibility for benefits, or to construe the terms of the Plan. <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989). If, however, the Plan grants such authority, the court reviews the Administrator's decision for abuse of discretion. <u>McGee v. Reliance Standard Life Insurance Company</u>, 360 F.3d 921, 924 (8th Cir. 2004); <u>Cash v. Wal-Mart Group Health Plan</u>, 107 F.3d 637, 640-41 (8th Cir. 1997). This is a deferential standard, and this Court will uphold the Administrator's decision if it was "reasonable; *i.e.*, supported by substantial evidence." <u>McGee</u>, 360 F.3d at 924. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u>, *citing* <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938). If substantial evidence is found, the Administrator's decision should be upheld even if a different, reasonable

interpretation exists.  <u>Cash</u>, 107 F.3d at 641.

In its motion for summary judgment, Defendant claims entitlement to summary judgment because the Plan Administrator's decision ending Plaintiff's benefits was reasonable, supported by substantial evidence, and did not amount to an abuse of discretion. In his responsive pleadings, Plaintiff argues that it is unclear which Plan is applicable, and which entities are properly vested with authority to determine eligibility.  Plaintiff argues that this lack of clarity creates a "procedural irregularity" significant enough to require *de novo* review by this Court, and cites <u>Seaman v. FMC Corp. Retirement Plan</u>, 334 F.3d 728 (8th Cir. 2003) in support.

The Court will first address Plaintiff's plan identity and plan administration issues.  Due to mergers involving Mercantile, Firstar and U.S. Bank, the original Mercantile Plan, pursuant to which Plaintiff had been receiving benefits, essentially ceased to exist, and the entity in existence during the time period relevant to this matter was U.S. Bank.  The U.S. Bank Long-Term Disability Plan ("U.S. Bank Plan") provides that employees already receiving LTD benefits from acquired companies (which in this case would include Mercantile) will continue to receive benefits (from the U.S. Bank Plan) "<u>while eligible under the terms of the plan of that acquired company</u> at the time of acquisition."  Adm. Rec. 1014, *emphasis added.*  This means that, because Plaintiff had already been receiving LTD benefits under the Mercantile Plan before Mercantile was acquired, Plaintiff remained

entitled to benefits as long as he continued to meet the Mercantile Plan's eligibility requirements.

Furthermore, as it is unreasonable to expect that Mercantile will continue to act as administrator after it has been acquired by another entity, the succeeding entity (in this case, U.S. Bank) must necessarily administer the plan. In other words, while the Mercantile Plan sets the eligibility conditions, it is the U.S. Bank Plan, as the active entity, which provides the procedures for both filing and reviewing claims.

The record further shows that Plaintiff's claim was reviewed by the proper entities. The U.S. Bank Plan contains a provision granting the plan administrator or its delegate discretionary authority to determine eligibility for benefits, or to construe the terms of the plan. The relevant portion of the U.S. Bank Plan provides as follows:

> U.S. Bancorp is the Plan Administrator and Plan Sponsor of the plans and will make determinations that may be required from time to time in the administration of the plans. U.S. Bancorp (or the Claims Administrator, to the extent the claims procedure for a benefit option indicates authority has been delegated to the Claims Administrator) will have the sole authority, discretion and responsibility to interpret and apply the terms of the plans and to determine all factual and legal questions under the plans, including eligibility and entitlement to benefits. Benefits under any plan, program or option will be paid only if the Plan Administrator (or the person or entity to whom it has delegated authority) decides in its discretion that the claimant is entitled to them. . . .

Adm. Rec. 1033.

Pursuant to this provision, U.S. Bank, as the Plan Sponsor and Plan Administrator, possessed discretion to determine eligibility, and delegated this authority to Hartford, as Claims Administrator, which initially reviewed Plaintiff's claim. Further provisions were made for claims review. The U.S. Bank Plan specifically provides that appeals of adverse benefit determinations will be reviewed by the U.S. Bancorp LTD Claim Subcommittee ("Committee"). Adm. Rec. 1028-1029.

The Eighth Circuit has held that, as long as the plan contains the necessary language granting discretionary authority to a plan administrator, the plan administrator may delegate its authority to another entity. McKeehan v. Cigna Life Ins. Co., 344 F.3d 789, 793 (8th Cir. 2003). "The plan need not spell out in intricate detail who has the discretion other than to specify that those charged with implementing it will have such discretion." Butts v. Continental Casualty Co., 357 F.3d 835, (8th Cir. 2004). The U.S. Bank Plan so specifies. Therefore, the fact that Hartford, and later the Committee, reviewed Plaintiff's claim and made decisions regarding his LTD payments does not amount to a "procedural irregularity." The Plan Administrator, possessed with the necessary discretionary authority, permissibly delegated its authority to other entities, to which the U.S. Bank Plan specifically confers the necessary discretion.

Finally, Plaintiff's reliance on Seaman is misplaced. There, the plan administrator failed to render any decision at all

regarding the plaintiff's benefits. Seaman, 334 F.3d at 733. The Court held that, if an ERISA plan gives the administrator discretion to decide certain issues, and the administrator fails to render a decision on those issues, *de novo* review is appropriate if the administrator's failure to act "raises serious doubts about the result reached by the plan administrator." Id. In contrast, the record in the instant matter reflects careful review preceding both the decision to terminate benefits and review of that decision following Plaintiff's appeal. The conduct of the Claims Administrator and the Committee do not, therefore, "raise serious doubts about the result" such that *de novo* review is appropriate.

Therefore, under Firestone and its progeny, this Court must determine whether the decision of the Claims Administrator and the LTD Subcommittee to end Plaintiff's benefits was arbitrary and capricious.[1] Under this deferential standard of review, the Court should uphold the decision if it is reasonable. McGee, 360 F.3d at 924. A decision is "reasonable" if it is supported by "substantial evidence," or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., *citing* Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938). If substantial evidence supports the decision, the Court should uphold it "even if a different, reasonable interpretation could have been made." Cash, 107 F.3d at 641.

---

[1]This amounts to an abuse of discretion standard of review, as "review for an 'abuse of discretion' or for being 'arbitrary and capricious' is a distinction without a difference . . . ". Schatz v. Mutual of Omaha Insurance Co., 220 F.3d 944, 496, n. 4 (8th Cir. 2000).

In order to terminate Plaintiff's disability benefits, it had to be determined that Plaintiff was no longer "disabled" as defined in the Mercantile Plan. As noted, *supra*, the question is not whether Plaintiff was able to resume his former occupation. The question is whether he is "unable to perform any work for which he is or may be trained." Adm. Rec. 923. As Defendant correctly notes, this is not a demanding standard.

The decision to terminate Plaintiff's disability benefits was reasonable, in that it was supported by substantial evidence. Hartford terminated Plaintiff's disability payments based in part upon the IME report of Dr. Denney, who concluded that Plaintiff did not meet the definition of being unable to perform 'any occupation'. Adm. Rec. 334. Plaintiff's medical records, along with Dr. Denney's report, were later reviewed by two independent physicians, Drs. Jay and Smith, who both agreed with the conclusion that Plaintiff's psychiatric problems did not preclude him from performing any work. In addition, Dr. Stromsdorfer, Plaintiff's treating physician, told Dr. Smith: "I don't believe he has no work capacity. There are certain jobs he could probably do." Adm. Rec. 59. Furthermore, the reports of Drs. Leonberger and Stromsdorfer, which Plaintiff provided to the Committee in conjunction with his appeal, do not support a finding of disability as such is defined in the Mercantile Plan. Dr. Leonberger states only that Plaintiff "does not appear to be capable of performing the type of work he has done previously." Adm. Rec. 30. Again, this is not the applicable definition of "disability" under the Mercantile Plan.

Finally, although Dr. Stromsdorfer reported that he disagreed with Dr. Denney's assessment of malingering and the absence of diagnoses for depression and anxiety, neither his medical reports nor his conversation with Dr. Smith contain an assertion that Plaintiff is unable to perform any work for which he is or may be trained.

This Court therefore finds no abuse of discretion in the decision to terminate Plaintiff's disability benefits.  The Court further finds that Defendant has established its right to judgment with such clarity that there is no room for controversy, and finds the record devoid of evidence sufficient to allow a jury to return a verdict for Plaintiff.  *See*, New England Mutual Life Insurance Co., 554 F.2d at 901 and Anderson, 477 U.S. at 249.

Therefore, for all the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Docket No. 31) is hereby granted in its entirety.

Judgment shall be entered accordingly.

*Frederick R. Buckles*
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of September, 2006.